# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

DANIEL DEFENSE, INC.,            )
                                 )
    Plaintiff,                   )
v.                               )
                                 )   Case No. CV414-131
REMINGTON ARMS COMPANY,          )
LLC,                             )
                                 )
    Defendants.                  )

## ORDER

"Consumers who purchase a particular product expect to receive the same special characteristics every time. The Lanham Act protects these expectations by excluding others from using a particular mark and making consumers confident that they can purchase brands without being confused or misled." *Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001) (citation omitted). The Act likewise "protects trademark owners. . . . [It] prevents another vendor from acquiring a product that has a different set of characteristics and passing it off as the trademark owner's product." *Id.* (cites omitted). It also drives the core of this trademark infringement action, brought by one

gun-maker against another, and generating a passel of pretrial motions.[1]

## I. BACKGROUND

Plaintiff Daniel Defense, Inc. ("DD") sued Remington Outdoor Company, Inc. and Remington Arms, Company, LLC ("Remington"). Doc. 1, *as amended*, doc. 14.[2] Remington Outdoor has since been dropped, doc. 89 at 2, so only Remington. DD "is a manufacturer, distributor and seller of firearms and firearms accessories in the United States with product distribution throughout the world." Doc. 46 at 3. It accuses Remington, a competitor, of copying and misusing its "LIGHTER, STRONGER, BETTER… ®" and ">> ®" registered trademarks, thus violating 15 U.S.C. § 1114(1) (the Lanham Act) and state law, O.C.G.A. § 10-1-370 *et seq.* Doc. 14 at 4; *id.* at 15 ¶ 30; *id.* at 16 ¶ 34.[3] DD also raises

---

[1] Pending on the docket are motions to compel discovery, doc. 62, to strike a jury demand, doc. 63, for a leave of absence, doc. 65, for declaratory judgment, doc. 66, to strike two defense experts' reports as well as their testimony, docs. 68 & 70, to seal documents, docs. 92 & 97, for summary judgment, doc. 74, and to strike evidence on which plaintiff relies in opposing summary judgment. Doc. 98. The motions to compel and seal will be reached here; the rest remain before the district judge.

[2] For purposes of this Order only, the Court is accepting as true the factual representations noted in the parties' Joint Status Report (doc. 46) and other filings.

[3] "Remington Arms is a manufacturer and distributor of firearms and firearms accessories." Doc. 46 at 5. It "contends it has not used these phrases in the manner of trademarks. The phrases are used merely descriptively, and are therefore protected by the fair use doctrine and cannot be the basis of a trademark infringement suit." *Id.* "Remington [also] contends that it has not used [DD's double bracket design Motif] in the manner of a trademark, and it therefore cannot be the basis of a

an unfair competition claim. *Id.* at 16-17. It seeks damages.[4] Despite a claimed discovery snag (hence, Remington's motion to compel, doc. 62), Remington has filed a summary judgement motion (doc. 74), which, if granted, would be case-dispositive of all DD claims. That motion is pending before the district judge.[5]

---

trademark infringement suit." *Id.* "In the alternative, Remington contends that even if the phrases and design were used in the manner of a trademark, . . . such uses create no likelihood of consumer confusion." *Id.*

   "In counterclaims, Remington seeks declaratory judgment that it has not infringed DD's trademark based on: "a) the fact it has not used the allegedly infringing material in the manner of a trademark, b) the invalidity of Daniel Defense's alleged trademarks, and/or c) the absence of a likelihood of confusion. Remington is also seeking cancellation of Daniel Defense's two trademark registrations based on the descriptive nature of Daniel Defense's word mark and the functional and/or ornamental nature of [its] design mark." Doc. 46 at 5-6. "Remington [thus] seeks a declaratory judgment that it can describe its products as 'lighter' and 'stronger' and use the common double chevron graphic in its advertisements." Doc. 74 at 4.

[4]   It also sought injunctive relief, *id.* at 17-18, but Remington has "subsequently ceased using those marks in [its] promotional materials and [DD] has informed the Court that the issue is currently moot." Doc. 89.

[5]   Meanwhile, says DD, "Remington's misappropriation of [DD's] trademarks and advertising has forced [DD] to file a further trademark infringement lawsuit that is presently pending before the Court (Civil Action No. 4:15-cv-00135-JRH-GRS). Th[at] lawsuit involves Remington's misappropriation of [DD's] "V3" trademark, pending to register before the USPTO. It is believed that this evidence is yet further reflective of Remington's 'intent' (because it involves serial and repeated misconduct)." Doc. 91 at 28 (footnote omitted).

# I. ANALYSIS

## A. Governing Standards

Motions to compel are governed by the rules of discovery, which

> "require the disclosure of all relevant information so that ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts. . . ." *Gonzalez v. ETourandTravel, Inc.*, 2014 WL 1250034 at * 2 (M.D. Fla. Mar. 26, 2014) (quotes and cite omitted). Hence, "[t]he scope of discovery under [Fed. R. Civ. P. 26(b)(1)] is broad and includes 'discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action.' *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S.Ct. 385, 91 L.Ed. 451 (1947)." *Id.* Those resisting discovery must "show specifically how the objected-to request is unreasonable or otherwise unduly burdensome." *Id.*
>
> *Claims and defenses* determine discovery's scope. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997). "'Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence.' *United States v. Capers*, 708 F.3d 1286, 1308 (11th Cir. 2013)." *Gonzalez*, 2014 WL 1250034 at * 2.

*Brannies v. Internet ROI, Inc.*, 67 F. Supp. 3d 1360, 1362 (S.D. Ga. 2014) (emphasis added). "Rule 26 . . . sets forth a very low threshold for relevancy, and thus, the court is inclined to err in favor of discovery rather than against it." *McCleod v. Nat'l R.R. Passenger Corp.*, 2014 WL 1616414 at * 3 (S.D. Ga. Apr. 22, 2014) (quotes and citation omitted).

4

## B. Trademark Standards

Remington's Motion to Compel turns on claims and defenses that principally revolve around the Lanham Act's protection of trademarks (a/k/a "marks"). The parties' chief *factual* dispute is over the "similarity of marks, similarity of goods, similarity of channels of commerce, similarity of care of consumers, similarity of associated goods and trademark priority." Doc. 46 at 6. Their chief *legal* dispute is "about the validity and infringement of the [DD] marks." *Id.* It is thus worth reviewing the Lanham Act principles that inform their arguments. Under it:

> a defendant is liable for infringement if, without consent, he uses "in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark" which is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a federal trademark infringement claim, a plaintiff must demonstrate (1) that its mark has priority, and (2) that the defendant's mark is likely to cause consumer *confusion. Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, ___ F. Supp. 3d ___, 2015 WL 1208047 at *3 (S.D. Fla. Mar. 4, 2015) (emphasis added).[6]

---

[6] *See also Dunkin' Donuts Franchised Rests. LLC v. Cardillo Capital, Inc.*, 551 F. Supp. 2d 1333, 1338 (M.D. Fla. 2008) (franchisee's use of "Dunkin Donuts" marks following termination of franchise agreement with franchisor was likely to have caused confusion among consumers, who wrongfully believed franchisee to be operating a franchised shop, as required to establish trademark infringement and

5

The confusion factor figures into plenty of discovery disputes, including a big bone of contention here:

> Courts in the Eleventh Circuit consider seven factors when determining whether or not a likelihood of consumer confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' trade channels and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. *Frehling*, 192 F.3d at 1335. Of these factors, *the type of mark* and evidence of actual confusion are considered the most important. *Id.* (citing *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir.1989)).

*Florida International*, 2015 WL 1208047 at * 3 (emphasis added); *see also Sovereign Military Hospitaller (Etc.) v. The Florida Priory of the Knights Hospitallers (Etc.)*, ___ F.3d ___, 2015 WL 6000633 at * 7-16 (11th Cir. Oct. 15, 2015) (comprehensive exploration of these factors); *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 2015 WL 1954075 at * 4 (S.D. Fla. Apr. 27, 2015). Discovery quests and, ultimately, the evidence presentation a plaintiff must make, necessarily delve into considerable nuances because courts not only *balance* those seven factors, but do "not have to consider all of [them] in every case and in some cases, new factors may merit consideration."

---

unfair competition claims under Lanham Act); *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1316 (N.D. Ga. 2008) (retailer's trademarks "WALMART," "WAL–MART," and "WAL*MART" and its word mark "ALWAYS LOW PRICES. ALWAYS" likely would not be confused with "WALOCAUST," "WAL–QAEDA," "FREEDOM HATER MART," or "BENTON*VILLEBULLIES ALWAYS" concepts).

6

*Sovereign Military Hospitaller,* 2015 WL 6000633 at * 8 (quotes and cite omitted). Too,

> the likelihood of confusion should not be determined "by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists ... [r]ather, a court must evaluate the *weight* to be accorded the individual factors and then make its ultimate decision." *Suntree Tech., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (quoting *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531 (11th Cir. 1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987)); *see also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007) ("Because the bottom line is the likelihood of confusion, application of the *Frehling* factors entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.'").

*Florida International*, 2015 WL 1208047 at * 3 (emphasis added). Such weighing enables the:

> determination of whether Plaintiff's mark is strong or weak. *Frehling*, 192 F.3d at 1335. The stronger the mark, the greater the scope of protection afforded to it. *Id.* [To that end, a] mark may fall into one of four categories of distinctiveness, in increasing levels of protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. *Id.* These categories are based on the relationship between the name and the service or good it describes. *Id.* Generic marks refer to a particular genus or class of goods or service providers . . . ; these marks are not entitled to protection. *Id.* (citing *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1182 n. 5 (11th Cir. 1985)). Descriptive marks describe a characteristic or quality of an article or service. *Id.* Suggestive marks "subtly connote something about the service so that a customer could use his or her imagination and determine the nature of the service." *Freedom Savings*, 757 F.2d at 1182 n. 5.

7

> An arbitrary mark is a "word or phrase that bears no relationship to the product." *Frehling*, 192 F.3d at 1335. Arbitrary marks are the strongest of the four categories. *Id.* at 1335–36.

*Id.* In many case the analysis (hence, discovery) extends to third party use (or not) of the disputed trademark. "The strength of a mark may also be affected by the degree to which third parties make use of the mark; the less that third parties use the mark, the stronger it is, and the more protection it deserves." *Id.* at * 4. Finally, "trademark rights are not static and . . . the strength of a mark may change over time." *Sovereign Military Hospitaller*, 2015 WL 6000633 at * 10 (quotes and cite omitted).

The public-university plaintiff in *Florida International*, which had trademarked "Florida International University"/FIU," sued a for-profit university, Florida National University ("FNU") for infringement. *Id.* at * 1. The court agreed that the two names "do sound similar," *id.* at * 6, but "examined in totality this factor does not weigh in favor of a finding of a likelihood of confusion." *Id.* Also, while the schools' degree programs overlapped, *id.* at * 7-9, there was "little evidence of an overlap in the *audience* of the schools' advertising," *id.* at 9 (emphasis original), and the difference in their applications standards and degrees that they issued suggested that there were two vastly different consumer groups.

8

Considering the students' presumed sophistication and their time and financial investment involved, they were unlikely to suffer trademark confusion, so the Court ruled against FIU. *Id.* at * 12.

The above standards evince a compendium of factors, which themselves are gauged at different intensity levels (*e.g.*, just how often and at what level of focus and retention do consumers associate a slogan or phrase with a particular product, and how often are they confused), and thus authorize (or not) pretrial discovery requests and potential judicial compulsion when such requests are not fulfilled. It therefore is not surprising that various imaginative measures are used to discover, then adduce, evidence to prove or disprove a trademark's classification (*i.e.*, whether it is generic, arbitrary, etc.). Trademark litigants can try to prove or disprove brand confusion, for example, with consumer surveys. *See Tartell v. South Fla. Sinus and Allergy Ctr., Inc.*, 790 F.3d 1253, 1257 (11th Cir. 2015) ("A plaintiff may prove secondary meaning with direct evidence, such as consumer surveys, or circumstantial evidence."); *accord, Florida International,* 2015 WL 1208047 at * 14; *TracFone Wireless*, 2015 WL 1954075 at * 10 n. 6. Experts can be used on that score, *see, e.g.*,

*Florida International,* 2015 WL 1208047 at * 14, as was done in this case.⁷

### C. Remington's Motion to Compel

In Remington's motion to compel it complains that it has repeatedly pressed DD

> to identify all the ways in which it contends Remington infringed on its marks. This was a topic in [Remington's Fed. R. Civ. P.] 30(b)(6) deposition notice [to DD]; however, DD did not prepare its designee, Roger Mustian, to testify on it. When it became clear that DD failed to prepare Mr. Mustian for the 30(b)(6) deposition, the parties agreed to resume DD's deposition at a later date; however, the second time was no better. DD again failed to prepare Mr. Mustian, and while Mr. Mustian testified that "numerous" examples of infringement existed in addition to those cited in DD's Amended Complaint, he refused to identify them. Because of this Remington does not know how it allegedly infringed on DD's trademarks other than what is specifically alleged in the Amended Complaint.

---

⁷ From Remington's summary judgment motion, in which it argues that "the Court should grant summary judgment in Remington's favor on three separate issues, any one of which is dispositive of DD's claims":

> First, there is no likelihood of confusion. Despite the fact that DD has the burden of proof on this issue, it has not only failed to present any evidence of actual confusion (and admits it is aware of no such evidence), but it also failed to obtain or produce any survey evidence tending to show a likelihood of confusion. By contrast, Remington obtained two surveys from a leading consumer survey expert (James Berger) showing that not only is there no likelihood of confusion among relevant consumers, but also that DD's purported marks are weak at best because they have not acquired any secondary meaning or distinctiveness.

Doc. 74 at 2. DD's response, in part: "Unfortunately Remington, a head-to-head competitor against [DD], is a serial copyist of [DD] and its trademarks and advertising. Remington has accordingly come to this Court with two (2) purchased 'surveys' and virtually nothing else."  Doc. 91 at 2; *see also id.* at 29-30, 32-37 (attacking Remington's experts and referencing its motion to exclude them).

10

Doc. 62 at 2. "All the ways in which [DD] contends Remington infringed on [DD's] marks," Remington contends, necessarily includes all examples (and documents, like copies of Remington's past advertisements) on which DD intends to prove infringement. *Id.* at 4-12. So, it wants them produced and DD's Rule 30(b)(6) witness, it concludes, should have been prepared to testify about them. *Id.*

Remington also asked DD how it "cleared" its own trademarks before adopting them.[8] Doc. 62 at 2. That's important, it contends, because DD accuses Remington of failing to take proper precautions before it ran its offending (according to DD) advertisements. *Id.* Remington defends against that accusation by insisting that it did not consider what it used in its advertising to be a DD trademark; alternatively, it at most used it in a "non-trademark" way. *Id.* Remington also "disagrees that its failure to run a trademark clearance search on non-trademark advertising is exceptional; it therefore seeks

---

[8] One conducts a "clearance" search to ensure against using a product's marking that might be confused with, and thus infringe upon, another's. From the United States Patent and Trademark Officer's website: "This search engine allows you to search the USPTO's database of registered trademarks and prior pending applications to find marks that may prevent registration due to a likelihood of confusion refusal." http://www.uspto.gov/trademarks-getting-started/trademark-basics/searching-marks-uspto-database

11

discovery into DD's trademark clearance process to see if DD holds itself to this high standard." *Id.* at 3. In effect, then, Remington seeks DD's demeanor evidence to bolster its defense (*i.e.*, if DD did not see fit to "clear" its own marks, then that's demeanor evidence that DD itself believed that its marks are generic or otherwise not protectable).[9]

Remington also wants DD to "disclose which of the advertisements [that DD] produced have been published, or when and where they were published." Doc. 62 at 3. That's relevant to DD's burden to prove Remington's infringement since DD must prove that consumers exposed to Remington's advertising "are likely to be confused" by it.[10] *Id.* Contending that DD has improperly refused to produce this information, Remington moves the Court to compel DD on those grounds, too. *Id.* at 2-23. It also wants attorney fees and costs as a discovery sanction. *Id.* at 23-24.

---

[9] DD dismisses Remington's "clearance data" quest as a wasteful diversion because anyone, including Remington's own counsel, can run a search in the USPTO's database; plus, that agency's Examiner was required to do so, and in fact reported the results. Doc. 64 at 6-10.

[10] This is a valid area of inquiry. Eleventh Circuit "cases do not require an 'identity' of sales or advertising methods; the standard is whether there is likely to be significant enough overlap that a possibility of confusion could result." *Sovereign Military Hospitaller*, No. 14-14251, ___ F.3d ___, Slip Op. at 34 (quotes, citation, and alterations omitted).

DD dismisses Remington's motion to compel outright, insisting that, *inter alia*, it "unnecessarily wastes the judicial resource, is testing of the discovery process, misconstrues the Record, inconveniences the Court via an improper request to reopen discovery, is wrong on the merits and the law, deals in distraction, and argues peripheral points -- and hence, should be denied." Doc. 64 at 1. DD cites its amended complaint, where it comprehensively set forth all of the ways in which it alleges that Remington infringed DD's trademarks. *Id.* at 3-6 (DD's response brief). DD now feels that it "should not be burdened by Remington's bad faith demand to be advised as to EACH and EVERY piece of advertising that contains the accused phrases and logo -- as Remington itself knows and has in its possession the identities of its own advertising materials which have been clearly identified since the very beginning of this lawsuit."[11] *Id.* at 6. On top of all that, Remington's motion and the discovery requests that support it are untimely.

---

[11] DD says it would be unduly burdensome to produce "every single advertisement that contains [DD's] asserted marks" because the representative examples that DD has thus far produced should be more than enough to show how consumers encounter its ads in the marketplace. Doc. 64 at 13. Remington responds that the discovery rules do "not give DD the discretion to declare that its self-curated selection is truly 'representative.'" Doc. 78 at 13. It also cites legal authority for the proposition that DD's advertising (hence, all of it) must be assessed as a whole for a secondary-meaning determination. *Id.* at 13-14.

13

Remington's compel motion is not untimely.[12]  And the Court would be inclined to agree with Remington that DD cannot have it both ways regarding its "infringement identification." Doc. 78 at 2-7.  Trial by ambush is not allowed, *McCleod*, 2014 WL 1616414 at * 2, and DD must necessarily know how and when Remington infringed its marks in order to meet the above-excerpted standards.  Indeed, it obviously will have to reveal it at trial.  So the Court would be inclined to limit DD from

---

[12]  DD insists it is because Remington sent it written discovery that contemplated responses beyond the Court's June 14, 2015 fact-discovery deadline (doc. 59) *and* did not file its motion to compel until July 30, 2015.  Doc 64 at 1-3.  But as Remington correctly notes, doc. 62 at 16-17; doc. 78 at 9, it timely served its discovery: "[T]he parties shall *serve* all written discovery on opposing parties and shall complete all depositions within 140 days of the filing of the last answer of the defendants named in the original complaint."  S.D. LOC. R. 26.1(d)(i) (emphasis added).  There is no dispute that Remington *served* its discovery within those 140 days, and when the Court issued its Scheduling Order, it did not intend to override Local Rule 26.1(d)(i).  Hence, service of discovery contemplating responses beyond the discovery period *is* timely.  DD's argument, by the way, would make sense if *this* Court's Local Rule 26 mirrored this district court's rule: "'[w]ritten discovery requests . . . must be served in sufficient time that the response is due on or before the discovery cutoff date" and failure to do so "obviates the need to respond or object to the discovery . . . or move for a protective order.'" *Danger v. Wachovia Corp.*, 2011 WL 1743763 at * 1 (S.D. Fla. May 6, 2011) (quoting S.D.Fla. Loc. R. 26.1(f)(2)).  But it does not.

Meanwhile, "Rule 37 of the Federal Rules of Civil Procedure does not specify a specific time limit for the filing of a motion to compel." *RDLG, LLC v. RPM Group, LLC*, 2012 WL 3202851 at * 1 (W.D.N.C. Aug. 6, 2012).  Alas, there is no "hard and fast rule" here. *Last Atlantis Capital LLC v. AGS Specialists, LLC*, 71 F. Supp. 3d 760, 762 (N.D. Ill. 2014).  It is true that Remington did not move to compel until July 30, 2015, doc. 62 -- over a month and a half beyond the discovery deadline.  But given the time it takes to fulfill the parties' duty to confer, see S.D. LOC. R. 26.5, the Court finds Remington's motion to compel timely. *See Antonetti v. Neven*, 2013 WL 4786029 at * 2 (D. Nev. Sept. 5, 2013) (noting time ranges of more than 100 days beyond the close of discovery in deeming a motion to compel as "unduly delayed").

14

introducing at trial evidence of allegedly infringing material other than what DD has specifically identified in its Amended Complaint and has timely produced to Remington within the discovery period here. *See Brannies*, 67 F. Supp. 3d at 1362 ("The discovery rules require the disclosure of all relevant information so that ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts. . . .") (quotes and cite omitted). To that end, the Court's review of the record thus far inclines it to award Remington Fed. R. Civ. P. 37 sanctions because DD, Remington has shown, supplied it with an under-prepared Rule 30(b)(6) deposition witness on the foregoing topic.[13]

---

[13]   Pause must be taken to review the subset of rules that apply here:

> Because Rule 30(b)(6) witnesses testify on the corporation's behalf, courts routinely hold that such deponents need not have personal knowledge on a given subject, so long as they are able to convey the information known to the corporation. *See Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D.Neb.1995) ("If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation.") (citing *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C.1989)); *see also Cruz v. Coach Stores, Inc.*, No. 96 Civ. 8099, 1998 WL 812045, at *4 n. 3 (S.D.N.Y. Nov.18, 1998) ("Rule 30(b)(6) does not require a party to produce someone who is 'most knowledgeable' but only someone whose testimony is binding on the party."), *aff'd in part, vacated in part on other grounds*, 202 F.3d 560, 573 (2d Cir.2000).

*Gucci Am., Inc. v. Exclusive Imports Intern.*, 2002 WL 1870293 at *8 (S.D.N.Y. Aug. 13,

But the lion's share of this discovery dispute stands a reasonable chance of being mooted if the district judge awards summary judgment to Remington (again, its pending motion seeks complete judgment against DD, doc. 74). Indeed, Remington's own "compel" reply brief underscores the inextricable intertwinement of its compel and summary judgment motions. *Compare, e.g.,* doc. 78 at 11-12 (compel reply brief arguing that DD must be compelled to produce DD's prior advertisements because they go to the very "secondary meaning" argument that DD insists that its marks have acquired, and "are also relevant to the likelihood of confusion analysis."[14]); *with* doc. 74 at 2 (summary judgment motion arguing that DD cannot show secondary meaning, citing *Tana v. Dantanna's*, 611 F.3d

---

2002). By the same token, the Rule 30(b)(6) deponent has: "an affirmative obligation to educate himself as to the matters regarding the corporation." *Concerned Citizens v. Belle Haven Club*, 223 F.R.D. 39, 43 (D. Conn. 2004). That "includes all matters that are known or reasonably available to the corporation. Even if the documents are voluminous and the review of the documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." *In re Neurontin Antitrust Litig.*, 2011 WL 2357793 at *5 (D.N.J. June 11, 2011).

[14] Advertising efforts are assessed for "distinguishability strength" in resolving whether a plaintiff has met his burden of establishing secondary meeting. *Tartell*, 790 F.3d at 1259 (sinus doctor failed to produce substantial evidence that his name had acquired secondary meaning in minds of consumers for purposes of establishing he had a protectible service mark under Lanham Act, in action against former partner who registered domain names using variations of sinus doctor's name; evidence of recognition of doctor's name in professional and academic settings, self-serving statements about his reputation, and advertisements from previous sinus practice wherein doctor's name was not prominently displayed or featured any differently than his partner's, did not demonstrate actual recognition or what his name denoted to consumer).

767, 777-83 (11th Cir. 2010) (granting defendant restaurant owner summary judgment; although the marks -- "Dan Tana's" versus "Dantanna's" -- were somewhat similar and used in similar sales channels, the plaintiff's mark was merely descriptive and thus weak, the parties' restaurants and advertisements were different and vastly separated geographically, there was no evidence of intent, and the evidence of confusion was "nominal")); *and id.* at 3 (seeking cancellation of DD's marks because they "are descriptive at best, and DD has presented no evidence of secondary meaning or acquired distinctiveness."). If Remington prevails on its summary judgment motion, that would moot its interest in discovering information on how DD generated distinctiveness (hence, secondary meaning) for its marks.

More importantly, a relevancy-based, "compel" decision here would risk conflicting with the district judge's ruling on Remington's summary judgment "Objection," filed as a summary-judgment-supporting motion to exclude evidence (thus invoking Fed. R. Civ. P. 56(c)(2); *see also* Rule 56(h)). In it Remington contends:

> DD prosecutes a trademark infringement case with one trademark that admittedly describes DD goods, and another that DD does not deny is a common graphic symbol. DD has no evidence of actual confusion, and the only survey evidence shows no

17

likelihood of confusion and no secondary meaning for either mark. Lacking the evidence necessary to prevail, DD resorts to objectionable tactics in an effort to survive summary judgment. DD produces witnesses it never disclosed in discovery, suddenly comes up with evidence it previously refused to provide, and contradicts its previous assertions in order to escape the impact of Remington's surveys.

Because of the paucity of evidence supporting its case, DD's claims are subject to summary judgment *even if this Objection* is overruled. Nevertheless, Remington objects to DD's tactics, its inadmissible and irrelevant evidence, and seeks to exclude them and their fruit (primarily undisclosed, irrelevant, or utterly mischaracterized evidence) from consideration by the Court.

Doc. 98 at 2 (footnotes omitted; emphasis added).

On summary judgment the district judge could rule, as a matter of law, that (as Remington contends) DD has no protectable marks at all, thus mooting the instant discovery dispute. Or, he could determine a trademark classification or strength level that would warrant some discovery, but not as much as Remington now seeks to compel. Put another way, there is a reasonable probability that a summary judgment ruling could sway the undersigned's ruling on what DD must now divulge, how much, and whether it should be sanctioned. Conversely, a ruling here may well conflict with a ruling there. It thus makes sense to administratively deny Remington's compel motion for the moment. Either party, for that matter, is free to invoke Fed. R. Civ. P. 56(d) if in

fact discovery of more information can reasonably be shown to affect summary judgment in its favor.  See *McCleod*, 2014 WL 1616414 at * 2.

## III. CONCLUSION

The Court **DENIES** in part (*i.e.*, the merits of) Remington's motion to compel (doc. 62) without prejudice to its right to renew it following the district judge's ruling on its summary judgment motion, doc. 74.  The Court **DEFERS**, until after the summary judgment ruling, Remington's sanctions request.[15]  Doc. 62 at 23-24; doc. 78 at 15-18.  DD's motion for a leave of absence is **DENIED** as moot.  Doc. 65.  Finally, the unopposed motions to file summary judgment exhibits under seal (doc. 92 & 97) are **GRANTED**.

**SO ORDERED**, this 19th day of October, 2015.

_____<br>
UNITED STATES MAGISTRATE JUDGE<br>
SOUTHERN DISTRICT OF GEORGIA

---

[15] Hence, if Remington loses its summary judgment motion, it can renew its motion to compel *in toto*.  If it wins summary judgment and thus moots the discovery issues here, it will still be free to renew its request for sanctions.  The district judge's summary judgment ruling, for that matter, may well impact the strength of the relevancy showing that necessarily undergirds Remington's sanctions request.